UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

MARCIA NORMANDE,

                        Plaintiff,

      -against-                                      Case No. 01 Civ. 7441
                                                                (JSR) (THK)

ROBERT GRIPPO, SHERIN, SABEK,
INNOVATIVE IMPRINTING, INC.,
and INNOVATIVE MORE BALLS,

                        Defendants.

------------------------------------------------------------------------X

## Preliminary Statement

      The defendant, Innovative Imprinting, Inc. ("Innovative"), submits this memorandum of law in support of its motion for reconsideration of its prior application for summary judgment dismissing the breach of contract claims that remain pending against it in this action.

      As discussed below, Marcia Normande's ("Normande") remaining claims against Innovative should be dismissed because Normande never acquired ownership of the trademark, "More Balls Than Most" ("MBTM"), and therefore she was unable to assign or license the trademark or to collect royalties for the alleged use of the MBTM trademark by Innovative.

      In his Report and Recommendation to this court, Magistrate Katz concluded that there were triable issues of fact with respect to Ms. Normande's contention that she had acquired ownership of the MBTM trademark prior to her June 21, 2000 agreement with Innovative that purported to transfer licensing rights for the MBTM trademark. In reaching this conclusion, Magistrate Katz specifically cited the letter of Todd Smith, dated May 22, 2000, which purported to transfer all rights to the MBTM trademark to Normande for the sum of one dollar. What the

H:\20855\0000\1252824.WPD

Court did not address, however, is the fact that an assignment of either or both statutory and common law trademark rights by Smith to Normande could not have been effectuated unless it was accompanied by the assets and/or goodwill of the business in which the MBTM trademark was ostensibly used. The May 22, 2000 letter from Smith did not transfer any of the assets and/or goodwill of Smith's business. Likewise, the subsequent assignment by Smith to Normande, dated October 22, 2000, which was executed by Smith <u>after</u> Normande's agreement with Innovative, purported to assign the goodwill "associated" with the trademark but not the assets or the goodwill of Smith's business in which the trademarks were supposedly used. In any event, as of October 22, 2000, neither Smith nor Normande had any goodwill to transfer since Smith ostensibly was no longer using the mark and Normande had already purportedly transferred the trademark rights to Innovative.

Under all these circumstances, Normande never acquired ownership of the MBTM trademark as she never acquired the assets or the goodwill of Smith's business in which the MBTM trademark was allegedly used. Nor did she continue the operation of Smith's business or, for that matter, operate any other business in which she used the MBTM trademark subsequent to Smith's assignment of the trademark. Instead, she admittedly was no more than a conduit through which her husband, Charles Fairbairn, who owed debts to an array of creditors including Innovative, sought to effectuate a transfer of rights to the MBTM trademark from Smith to Innovative. However, given the fact that Normande never acquired ownership of the MBTM trademark, her subsequent agreement with Innovative did not transfer anything of value and was unenforceable. Moreover, any value to the MBTM trademark had already been destroyed by virtue of the machinations of Normande's husband, who sought to shield the trademark from creditors by "parking" it with Smith while he continued to use the trademark in the operation of

his own business. For all these reasons, it is respectfully submitted that summary judgment should now be granted dismissing the remaining contract claims pending against Innovative.

### Statement of Facts

More Balls Than Most Limited was a company incorporated in England that manufactured and sold juggling equipment and accessories (see, Exhibit G(e) at p.2).[1] Normande's husband, Charles Fairbairn, worked full-time for More Balls Than Most Limited from 1991 to 1995. (Exhibit F, Normande deposition, 30:10 to 32:6).

On October 13, 1995, two receivers were appointed under the laws of England to administer the liquidation of the assets of More Balls Than Most Limited as a consequence of its insolvency (see, Exhibit G(e) at p. 2).

Thereafter, on December 15, 1995, by agreement between the receivers for More Balls Than Most Limited and Todd Smith Products, an Ohio corporation, the trademarks and stock of More Balls Than Most Limited were sold to Todd Smith Products (Exhibit G(e)). Todd Smith Products paid More Balls Than Most Limited £17,500 for its trademarks and £600 for its stock.

An application that had been filed by More Balls Than Most Limited to register the MBTM trademark in the United States was abandoned on March 13, 1996 (Exhibit J). On July 20, 2000, Todd Smith Products filed its own application to register the trademark for More Balls Than Most in the United States (Exhibit J). On July 10, 2001, the trademark for More Balls Than Most was registered to Todd Smith Products by the United States Patent and Trademark Office (Exhibit J).

---

[1] References to Exhibits are to the exhibits annexed to the previous Affidavit of Fred D. Weinstein submitted in support of the Defendants' Motion for Summary Judgment and executed on June 13, 2002.

Notwithstanding the apparent transfer of the ownership of the trademark for More Balls Than Most by More Balls Than Most Limited to Todd Smith Products in 1995, Charles Fairbairn moved to New York City in April 1997 and commenced doing business under the name of More Balls Than Most Logo, Inc. in connection with the manufacture and sale of juggling balls and stress balls. (See, Normande deposition, Exhibit F, 27:13 to 28:8; 38:19 to 39:4) In the course of its business activities, More Balls Than Most Logo, Inc. accumulated substantial debts to numerous creditors including but not limited to the United States government for unpaid taxes and to Innovative for an unpaid contractual obligation (Exhibits G(a) and G(c)).

On April 25, 2000, Mr. Fairbairn, who was a principal shareholder of More Balls Than Most Logo, Inc., initially proposed satisfying the acknowledged indebtedness of $23,000 to Innovative by selling certain assets to Innovative (Exhibit G(a)). Fairbairn subsequently proposed that licensing rights to use the trademark "More Balls Than Most" be provided to Innovative in return for payment of future royalties to Normande (Exhibit G(g)). In furtherance of this proposal, Fairbairn provided Innovative with a letter from Todd Smith, dated May 22, 2000, which purportedly confirmed that Fairbairn's wife, Normande, had previously acquired ownership of the trademark from Todd Smith Products (Exhibit G(f)). The letter, which was signed by Todd Smith, individually, stated:

> "This is to confirm in writing that all trademarks associated with More Balls Than Most, have formally been sold to you for the sum of one dollar. Todd Smith Products therefore has no interest, claim or responsibility for the trademarks, which now, in their entirely (sic.) belong to you for your unrestricted use."

Fairbairn further promised Innovative that Innovative would be given an attorney's opinion letter, which would confirm that Normande had acquired the rights to the trademark from Todd Smith Products and could transfer rights to the trademark to Innovative (Exhibit G(g)).

In June 2000, the proposed agreement assigning trademarks for More Balls Than Most by Normande, Fairbairn's wife, to Innovative was prepared for execution by Innovative (Exhibit G(h)). The agreement contained the representation of Normande that she was "an individual and the rightful owner of all trademarks pertaining to the 'More Balls Than Most' brand, and distinct from any corporations bearing a similar name." (Exhibit G(h)).

Subsequent to Innovative's execution of the proposed agreement, Eric Zalud, counsel for Todd Smith Products, was asked by Fairbairn to provide the promised opinion letter certifying Normande's acquisition of the trademark. (Exhibit I(2); Zalud deposition, Exhibit H, 28:25 to 31:10) However, after review of the relevant documents, Eric Zalud issued his opinion letter of July 20, 2000 and stated unequivocally there had not been a transfer of rights to the U.S. trademark by Todd Smith Products (Exhibit I(4)). The letter stated in relevant part:

> According to our records, trademark rights for the mark More Balls Than Most were assigned to Todd Smith Products from More Balls Than Most, Limited on December 15, 1995. It is our understanding that in the interim Todd Smith Products has used the mark in commerce. Todd Smith Products has also filed a second U.S. trademark application for the mark More Balls Than Most, which is currently pending before the U.S. Patent and Trademark Office. <u>In addition to U.S. trademark application rights, Todd Smith Products currently owns common law trademark rights to the mark More Balls Than Most. The rights owned by Todd Smith Products with respect to the mark More Balls Than Most are freely transferable or assignable upon proper execution of assignment documents (which have not yet been prepared or executed).</u>" (Emphasis supplied.)

Upon receipt of the foregoing opinion letter from Mr. Zalud, Charles Fairbairn pressed Mr. Zalud to change his opinion so that he could avoid a claim of fraud by Innovative and specifically a claim that there had been a misrepresentation of ownership of the trademark by Normande. (Exhibits I(6), I(7) and I(8)) In a letter faxed to Mr. Zalud by Mr. Fairbairn on July 21, 2000, (I6) Mr. Fairbairn forwarded his letter with a fax cover sheet stating "Some changes needed." In the accompanying letter to Zalud, Mr. Fairbairn stated:

> "Can I suggest therefore a rephrasing of the letter that prominently indicates these two points.
> 1. In 1995 Todd Smith Products bought the trademarks. Todd Smith became the legal owner of them.
> 2. In June 2000, TSP [Todd Smith Products] sold them to Marcia Normande. Marcia Normande is therefore the legal owner of the trademarks and therefore has the right to use, license or sell the trademarks...
>
> As you well know, I am desperate to get this concluded... Can we do this before the weekend?"

On August 3, 2000, Mr. Fairbairn faxed yet another letter to Mr. Zalud and acknowledged Normande's potential liability for fraud to Innovative and threatened Mr. Zalud unless he changed the opinion letter. (Exhibit I(8)) Mr. Fairbairn stated as follows:

> "Without going into the full subversive nature of your dealing with me, that are tantamount to lies, your office has produced documents and suggested that trademarks were not transferred. As a result of this the third party are suggesting that the licensing of those trademarks was invalid and that Ms. Normande has acted fraudulently...
>
> Since my wife is now being accused of fraud, you must realize that the situation has escalated into something very serious...
>
> The only remedy at this stage is to validate that the enclosed letter constitutes a binding agreement and that the trademarks became the property of Marcia Normande of May 22nd 2000. <u>It is not good enough to claim that they are transferred as of today</u>...
>
> I need a document that validates the integrity of the May 22nd letter.
>
> "Todd Smith was the rightful owner of the trademarks until on May the 22nd he legally transferred them to Marcia Normande of etc..."
>
> If not, see you in hell." (Emphasis supplied)

Notwithstanding the thinly veiled threats contained in Mr. Fairbairn's letter of August 3, 2000, which also enclosed a copy of Smith's May 22, 2000 letter, Mr. Zalud refused to change his opinion (Zalud deposition, Exhibit H, 128:25 to 129:15).

In August 2000, Normande left New York with her husband, Charles Fairbairn. (Exhibit F, Normande deposition, 110:19 to 110:22). Normande never exercised or attempted to exercise control over Innovative's use of the trademark for More Balls Than Most at any time before or after her departure from New York. (Exhibit F, Normande deposition, 99:16 to 99:21; 110:19 to 112:22, Exhibit G(h)).

Upon learning that Normande did not own the trademarks for More Balls Than Most, Innovative terminated its relationship with Normande. (Exhibit C, complaint at para. 6).

Normande then filed the instant action in which she alleged three causes of action, all of which were based on the alleged agreement between Normande and Innovative. In Count I of the complaint, Normande alleged that Innovative breached the agreement by failing to pay royalties purportedly due to Normande for the use of the trademark and the sale of trademarked products. Count II alleged a further breach of the agreement because of the alleged failure of Innovative to provide documentation relating to the sales of trademarked products. Count III alleged fraud against Innovative and the named co-defendants because of the alleged concealment of a sale of trademarked products by Innovative.

In the Answer to the Complaint, Innovative counterclaimed for damages arising from Normande's fraudulent representation of ownership of the MBTM trademark (Exhibit B).

After the completion of discovery, all of the defendants moved for summary judgment dismissing the complaint. The Defendants argued that the contract claims should be dismissed because of the failure of consideration since Normande never obtained ownership of the trademark from Smith, the ultimate registrant of the trademark, and therefore could not collect royalties for the use of the trademark. Innovative's co-defendants further noted that no contract claims could be asserted against them for the additional reason that they were not parties to the

alleged contract with Normande. Dismissal of the fraud claim was sought because it was no more than a duplication of the contract claims.

The Report and Recommendation of Magistrate Judge Katz recommended that summary judgment be granted in favor of all the defendants except Innovative dismissing the entire complaint. As to Innovative, the Magistrate recommended dismissal of the fraud count. With respect to the contract claims against Innovative, the Magistrate recommended denial of summary judgement because of his expressed view that "[d]rawing all inferences in favor of the Plaintiff, the non-moving party, the Court cannot conclude on this record that the undisputed facts demonstrate that Normande did not own the trademarks before she licensed them to Innovative." (Report and Recommendation at p.13). In this connection, the magistrate cited the letter from Smith to Normande, dated May 22, 2000, as evidence that might rebut any presumption of ownership flowing from Smith's ultimate registration of the mark.

Normande filed objections to the Magistrate's Report and Recommendation but this Court adopted the Report and Recommendation and summary judgment was granted dismissing the complaint against Innovative's co-defendants and dismissing the fraud count against Innovative.

By order of this court dated December 2004, leave was granted to Innovative to file the instant application for reconsideration of its application for summary judgment dismissing the remaining contract claims.

### ARGUMENT

### SUMMARY JUDGEMENT SHOULD NOW BE GRANTED IN FAVOR OF INNOVATIVE

A. <u>Standard of Review</u>

Pursuant to 28 U.S.C. §636(b)(1) this court has broad latitude in considering a magistrate judge's recommendations, and the court is not bound by the recommendations, even if no party

objects to them. <u>Grassia v. Scully</u>, 892 F.2d 16, 19 (2d Cir. 1989). When objections are timely made to a portion or portions of a magistrate judge's report, the district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.' 28 U.S.C. 636(b)(1). The district court judge may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]." Id. Here, by order dated December 2004, this court granted leave to Innovative to make objections and seek reconsideration of summary judgment and thus the Magistrate's recommendation pertaining to Innovative is now properly subject to de novo review.

> B. Normande's Contract Claims Should Be Dismissed Because She Never Acquired Ownership of the MBTM Trademark

It is beyond dispute that Normande could not and cannot enforce an agreement requiring payment of royalties to her for use of the MBTM trademark unless she earlier acquired ownership of such trademark. Indeed, unless she had acquired ownership of the trademarks, Normande had no interest in the trademark that could be transferred to Innovative or, for that matter, enforced. <u>Universal City Studios, Inc. v. Nintendo Co., Ltd</u>., 578 F.Supp. 911, 923 (S.D.N.Y. 1983) (Summary judgment was granted dismissing Universal's claims for damages relating to the use of the King Kong trademark where Universal had never acquired ownership of such trademark). It is equally well settled that ownership of a trademark could not have been obtained by Normande in the first instance unless it was acquired together with the goodwill of the business in which it was utilized. Id. ("Trademark rights do not exist in the abstract, to be bought and sold as a distinct asset,. They exist only in connection with a business or a product and can be transferred only along with that product or business or its goodwill."); <u>Berni v. International Gourmet Restaurants of America, Inc.</u>, 838 F.2d 642 (2nd Cir. 1988) ("…the transfer of a trademark or trade name

without the attendant goodwill of the business which it represents is, in general, an invalid, 'in gross' transfer of rights."); Marshak v. Green, 746 F.2d 927 (2nd Cir. 1984).

The decision of the Second Circuit in Marshak is particularly instructive. There, the plaintiff sought to enforce an unsatisfied monetary judgment by attaching and selling the judgment debtor's proprietary interest in the trademark, "Vito and the Salutations". The district Court denied the judgment debtor's application for a stay of the Plaintiff's attachment and sale of the trademark but the Second Circuit reversed, finding that a trademark could not be sold separate from the business with which it was associated:

> "A trade name or mark is merely a symbol of goodwill; it has no independent significance apart from the goodwill it symbolizes . . . There are no rights in a trademark apart from the business with which the mark has been associated; they are inseparable, (citations omitted). Use of the mark by the assignees in connection with a different goodwill and different product would result in a fraud on the purchasing public who reasonably assume that the mark signifies the same thing, whether used by one person or another."

Marshak v. Green, 746 F.2d at 929.

Although Magistrate Katz acknowledged that an assignment of a trademark cannot be effectuated without transferring the goodwill associated with a trademark (Report and Accommodation at p. 10), he nonetheless failed to address whether Normande had acquired the requisite goodwill of the business in which the MBTM trademark was utilized. Here, the record reflects that Normande could not have acquired ownership of the MBTM trademark as she never acquired the goodwill or the assets of the business in which the MBTM trademark was used. The assignment by Smith, dated May 22, 2000, simply purported to transfer "all trademarks associated with More Balls Than Most" and nothing else (Weinstein Aff., Ex. G(f). Similarly, the subsequent assignment by Smith to Normande, dated October 22, 2000, which was obviously executed by Smith after Normande's agreement with Innovative, purported to assign the goodwill

"associated" with the trademark but not the assets or the goodwill of Smith's business in which the trademark was ostensibly used. Nor could any goodwill have been transferred as of that date. By October 22, 2000, Smith ostensibly was no longer using the mark since he purportedly has assigned it to Normande in May and Normande had already purportedly transferred the rights to Innovative in June. As the Supreme Court held long ago, goodwill "is tangible only as an incident, as connected with a going concern or business…and is not susceptible of being disposed of independently." Metropolitan Bank v. St. Louis Dispatch Co., 149 U.S. 436 (1893).

It is equally apparent that Normande never continued operation of Smith's business in which the MBTM trademark was ostensibly used. Instead, the May 22, 2000 assignment from Smith to Normande was followed immediately by the June 2000 assignment agreement transferring licensing rights to Innovative and Normande admittedly never engaged in the business of production of the trademarked products. Thus, Normande was no more than a conduit by which her husband attempted to effectuate a transfer of the trademark while avoiding the claims of innumerable creditors of his business, More Balls Than Most Logo, Inc. However, in attempting to "hide" the trademark from her husbands's many creditors, Normande and her cohorts destroyed whatever U.S. trademark rights may have existed, leaving nothing for Normande to transfer to Innovative. As explained by Professor McCarthy:

> "A trademark is a kind of property, but a very delicate property right it is. Great care must be taken in the nature of its use, and in the manner in which it is assigned or licensed, lest the significance of the mark be lost. As Justice Holmes put it: [A trademark] deals with a delicate matter that may be of great value but that is easily destroyed and therefore should be protected with corresponding care'." McCarthy on Trademarks at §2:15.

Here, the separation of the trademark from the assets and the goodwill of the business in which it was utilized served to destroy the trademark. Therefore, it is respectfully submitted that the instant objections should be sustained and summary judgment should now be granted dismissing

the remaining contract claims pending against Innovative.

## CONCLUSION

It is respectfully submitted that Innovative's objections should be sustained and summary judgment should now be granted dismissing Normande's remaining claims against Innovative together with such other and further relief as the Court may deem just and proper.

Dated:   White Plains, New York
         January 24, 2005

                                              Yours, etc.,

                                              KURZMAN EISENBERG CORBIN
                                               LEVER & GOODMAN, LLP

                                              By:_____
                                                  Fred D. Weinstein (FDW 5682)
                                                  A Member of the Firm
                                                  Attorneys for Defendant
                                                  Innovative Imprinting, Inc.
                                                  One North Broadway, 10th Floor
                                                  White Plains, New York 10601
                                                  (914) 285-9800

TO:   MARCIA NORMANDE, Pro Se
      Avenue Robert Kennedy, 2865-AP504
      Ponte Verde
      Maceio, AL 57035-160
      Brazil